Oral Argument not to exceed 15 minutes per side Mr. Mary for the plaintiff appellate. Good morning and may it please the court. I'm Benjamin Mary for Ralph Gragg and I'd like to reserve three minutes please. Very well. The district court here erred in concluding that Mr. Gragg's claim for underpaid benefits began to accrue in 2010 such that the statute of limitations expired in 2016 which was two years before the plan ever underpaid his benefits. He got his first payment in 2018 right? Well so he got his first payment so he like the first post age 65 payment I guess. Correct yeah he turned he turned 65 in July of 2018 and then they were supposed to apply the leveling option in in August of 2018. Okay so that was the first time his benefit was ever reduced. The court has invited us to address some article three standing questions so I plan to address this morning two points. The first is that Mr. Gragg did not suffer an injury in fact prior to August 2018 and the second is that his claim was not ripe in July of 2010. Now those arguments might have some merit but are they preserved in this case? Well the the court has an obligation to raise standing questions on its own. This isn't standing isn't it more of a statute of limitations accrual? Standing goes to our jurisdiction and I don't think this is a jurisdictional question is it is it? I mean it's more of a whether there's statute of limitation bars the claim. Well so the the statute of limitations begins to run when when there is an injury and our I mean your your client has standing there's no question about that. Okay. In terms of trying to find the right answer to the limitations question it'd be awfully strange if he was required under our construction and the limitations period to bring the claim before he ever had standing to bring it. That would just be a pretty strong indicator that something is wrong in our reading of the limitations period. And I would agree speaking for myself that's kind of the that's why I think standing's germane. You know if he didn't have standing to bring this until 2018 because he hadn't gotten a payment yet that was something he could complain about and that he was injured by then it would be pretty strange to say the limitations period expired in 2016. I would agree with you your honor. Our our point is that the plan had an obligation throughout the the the life of its relationship with Mr. Gregg to apply the the terms of the plan as they're as it are written. We don't believe that Mr. Gregg was ever injured prior to the the underpayment. In fact if the plan's letter in July 2019 is to be believed Mr. Gregg actually received more money than he was entitled to prior to 2018. 2018 was the first time that he was actually underpaid. So we don't know how he could have I mean well the the Supreme Court's injury in fact case law it requires him to suffer a concrete injury and prior to him being underpaid. I really understand all that but my question is have you argued that? Did you argue it below? Did you argue it on appeal? We did not your honor but is that the end of the case? It's unpreserved? Well I don't I don't think so because we we pegged when we when we filed our claim we said that UPS erred when they... You raise the issue of when the statute accrues. I grant you that. So the issue is in front of us. It's just the the argument that may be the winning argument. I just don't know what we do with that. You know neither party I guess addressed whether the... You were all focusing on whether the letter was a repudiation and therefore was clear enough that they repudiated the their obligations at that point and I tend to agree that there's no injury at that point because there was nothing owed until 2018. Okay but I guess to answer my question you think we should you've raised the issue and we should address the argument? Yeah our argument for the district court was that he was injured in 2018 that's when that's when they underpaid him and and so that's when the clock should should start. So the standing thing it really dovetails with what you argued would the 2018 is the is the the the operative date and you just didn't use the word standing or right or is that I mean I'm trying trying to put this best forward to that for you but. Yeah yeah I'm I'm not sure where our confusion is your honor. We we initially had requested argument on on this case and and the court about two weeks ago scheduled it for argument and invited us. This issue came to light and I mean you you certainly say in your blue brief that your client was not injured until 2018. Right he he he was underpaid in 2018 but before that there was no the UPS never breached any obligations to him he was never financially harmed. It was it was only after he sued that UPS kind of kind of said well our our letter our form letter that I don't think was ever supposed to convey any final reason to determination on on the issue they said that that actually started the clock. And we get that I think we understand your position. I think we do Judge Batchelor. I'm fine. Okay let's hear from the UPS. All right thank you. Good morning. Good morning thank you your honors may it please the court I'm Tim McDonald for the UPS pension plan. Ralph Gregg suffered an injury in fact for purposes of article 3 on July 12, 2010 when he was told to the penny what he was going to receive. Do you think what's the so if I mean the article 3 thing is sort of an exercise to test whether the limitations interpretation or conclusion is correct. And so if it's July if it's June or July 2010 and he goes in and tries to file say a deck action saying they just told me in eight years I'm going to get paid less than I think I'm entitled to. The court would say okay well you need an injury in fact and that means that it must be it needs to be concrete. It needs to be which means it needs to be actual or imminent. Yes. Okay so what is his action and this is a pocketbook claim. Yes. What is his pocketbook injury in 2010? He's saying I'm going to get paid less in eight years so what's his how's this affecting his bank account in 2010? Both constitutionally and statutorily. I realize you're only asking me constitutionally but I'll answer both at the same time. Sure. The he only needs to be told what the amount will be in the future and that is when the injury occurs because there's nothing left for him to do. He's not going to work anymore. What is the injury at that point? The injury at that point is he knows his claim for a penny more a hundred dollars more whatever has been denied. They have told him in the future you are not getting this that's just not a concrete injury in fact that somebody said they're going to do something I don't like in eight years that I think violates my rights. I mean the courts don't adjudicate stuff eight years in advance. People die. People work out. You know circumstances change. There are just innumerable reasons why you don't you don't do it eight years in advance. They change their mind. If I may your honor. You know you might get new management and they say oh gosh I guess we made a mistake back in 2010. I think we will pay you what we owed you and that's one reason we don't I mean is there an actual case in controversy until there's an injury we it's more hypothetical before before they have to pay him and we don't deal with hypotheticals. If I may the Supreme Court in Thole v. U.S. Bank said future benefits are actionable now. If you've got a dispute over future benefits. What case is this? Thole v. U.S. Bank 140 Supreme Court 1615 2020 and if I may explain the context of that case. Thole yeah. That's also a defined benefit case like this one so in other words it's not a 401k case. There's a huge pot of money and everybody here who worked and is eligible is going to get different amounts based on our service. In Thole they were told here's what you're going to get for the rest of your life including 20 years from now. Okay but had they you know was there any actual or imminent payment that the plaintiff said was too small? If I may your honor the in that case the reason why the holding supports us is Justice Kavanaugh writing that opinion used the fact that if there's future harm that's enough to justify why those plaintiffs didn't have a claim. Those plaintiffs were told here's what you're going to have going forward and they made every single payment and they started to receive the amount about which they later complained. Right and they were saying you made a 75 million dollar investment error and you're gonna you've now got 75 million dollars less in that bucket and he said Justice Kavanaugh wrote for the majority wait a minute you're not gonna if you win your benefit doesn't change either way ever. It doesn't matter whether you win or lose your benefits always going to be the same. If it was different that's the distinction in Thole. If there's a difference in the benefit and he would have a difference in his benefit it doesn't have to be immediate. The Supreme Court and it's right in this cases and I don't want to take a look at that I mean I I'd be pretty surprised if he's saying that you can have zero pocketbook injury but you think something you don't like something in 10 years and so we're happy to adjudicate it for you now. It's my guess is he had a he had a pocketbook injury years before he brought that suit. It's my guess if you know just have instincts about it. There was no losses at all the plaintiffs stipulated that they had not had any loss at all in Thole. Okay well we will look at that very carefully. Is there any other authority you wish us to look at? I recognize that this is kind of a variation of the issue that has been raised. Yes and and tell me what other authorities you want us to look at on that case. On the constitutionally ripeness concrete injury sometimes these things bring together. The real reorganization cases if I may date myself and including Conrail 419 US 102. Say that again. 419 US 102 at 143 and the quote is that it's irrelevant to the existence of a judicial controversy that there will be a time delay before the disputed in that case it was legislative provisions. Disputed provisions will occur. Here it's if you substitute the word payment for provisions that's your holding. And the reason why in the ERISA standpoint that's very important is the actuaries have to tell the government today what the funding stream is going out 25 and 50 years based on all of these projections. So there's not an opportunity to just change these numbers. They're locked in. Well that's an obligation the company has or the plan has to the government. It has really nothing to do with obligation vis-a-vis Mr. Gregg. But my point on that is these things don't change. The plan has made its decision and that's it. Now there's no allegation here by the way that he misunderstood this. So this isn't a case where I didn't understand. They told him in plain English this is what you're going to get. I've read all the letters. It's a pretty tough standard if we're going to say that everybody who gets one of these letters and we've all gotten them is expected to fully understand everything that these sorts of you look at page 12-1-36. Yeah, I know. But he got two letters. And if we're just talking about what he understood, what he thought is this payment is going to be level. That's a pretty straightforward concept. That my payment is going to be level and I got a letter here and it says that they're going to change my payment when I start getting Social Security. And I got another letter over here. It probably looks like a bunch of mumbo-jumbo to most people, but they told me it's going to be level. And then it's not level. It's a crater when he turned 65, which I'm sure was a shock. We can read it and we can sort it out, but it's a tough standard. And other courts have said it's a tough standard for beneficiaries. The plan sends them a bunch of folded pages and now they're supposed to know everything. We told him to the penny what he was going to do. I mean, what does wake people up is when they get paid a lot less than they expect. That's when they realize something is awry. And that's why claims usually accrue when you get less money than you thought you're supposed to get, as opposed to you got a letter 10 years ago telling you you might get less money in eight years. If I may, Your Honor, the accrual rule is a common law background rule. Congress in ERISA said you can sue over future benefit payment amounts. And that's in 29 U.S.C. 1132A1B. If you... I mean, but Congress has a limited ability to generate injuries that are not really injuries. I understand. But here is the problem with the road that the logic that underlines some of your questions... What's the statutory provision again? The statutory provision is 29 U.S.C. 1132A1B. Oh, sure, of course. And if I may, Your Honor, and that allows you to bring suit for clarification of your future rights to benefits. It's unlimited, right, to your future rights to benefits. So that would mean that that part of that section is a limitation. Let me walk back because I'd like to engage, Your Honor, on that point. What is too early? Is it August 1 of 2017? August 1 of 2016? August 1 of 2015? There's no limiting principle. There's no limiting principle. Imminent. Imminent is not... Imminent, try to work it out, clear it up, fix mistakes. And then if it's imminent, you're going to, they're going to do this to me in two months, you'll probably get adjudicated. I don't know. I mean, we draw that line when we get that case. Imminent is what the Supreme Court tells us. Well, not necessarily for concrete, right? Imminent, that goes to more to ripeness and the fact the Supreme Court has said it's not a time delay. Lujan, 1992, Justice Scalia. Defenders of Wildlife, right. Actual, injury in fact means actual and concrete. Yes. And actual is like now or quote imminent. That's from Lujan. Well, but with Lujan, those were people who just had very generalized grievances about what was going on. That's a different problem. Nobody could... He doesn't have a generalized grievance. Right, but that's really what Lujan was, a generalized grievance case. People saying... Lujan is the iconic restatement of standing law as to injury in fact, traceability, and whatever the other one was. And so it builds on it and says, look, if either you are not going to get paid, you are not getting paid the amount you think, or you're not going to get paid that amount in the future, you've met Article 3. Well, and I mean, actually, and so the other part of Lujan was the limits on Congress's power to make up injuries that aren't actual injuries. And this business about, well, anyway, that's the second part of Lujan. The first part is... But the second part is germane to what you're talking about. Congress can't say, feel free to bring suit 10 years before anything really happens. Right, and the Supreme Court in Dole says, if you are told you're going to get paid the amount you think, then you don't have standing. But if they tell you something different, the language all the way through that, the majority opinion is contrasting the idea that you're getting what you've been told versus you are not getting what you've been told. And it says, for example, it looks to whether or not it would make a difference. If Dole and Smith were to win this lawsuit, they would still receive the exact same monthly benefits they are already slated to receive, meaning looking forward. If Mr. Gregg won this lawsuit in 2012, he would be receiving a different amount in the future. There is no time period that is set by ripeness or standing law that says you really have to get this close. What it looks to is... Why isn't actual or imminent exactly that time period? Because the harm is the decision. The Supreme Court in Delaware State College versus Rick's took the opposite position. In 449 U.S. 250, 261 to 262, 1980, it said in the context of a termination case, it doesn't matter when you're going to get terminated. If you're told your contract is not going to be renewed after this contract, your clock begins to run when you are told that, not when the contract ends. So a contrary ruling to us would mean Rick's was wrongly decided. And Rick's is a cornerstone of employment law. You would have preliminary injunction problems left and right because people might leave with a customer list. And you would say, yeah, but they haven't used it. They haven't called anybody. What's the harm if they've got your list? Kind of like the idea that you actually have to wait until the customer has been uprooted in order for there to be jurisdiction. Well, nobody's ever taken that position. We have preliminary injunction cases all the time. You don't have to wait until the harm occurs or declaratory judgment. There's a whole series of doctrines that dictate when you can bring those. And if I may, Your Honor, I agree with you, but they're not based just on a timeline. They're based on the concept of, is the decision final? There's no indication here that anybody had any expectation that anything would change. And do you have a sufficient record? So this court in computer services versus Deb Herring Ford, and I'm going to be out of my time before I read this, if I may. I applaud your precedence that you're bringing us. 547 F3rd 558 at 561 says, likelihood the harm will come to pass. We win on that because it's the final decision. We said, here's what your benefit is. He knew it. So we win on number one. The hardship, you're not going to get paid unless you challenge it. So he's got a hardship. And then the development of the record. The record was the exact same in 2010 that it is today. I would just, I mean, those considerations, finality, the record, they're just a different consideration than whether he's got an injury. The discovery rule, to sort of bring it back. He's got a certain amount of time to discover his injury when he either knew or should have known about his injury. And the idea that he's injured because somebody told him that they're going to do something in 10 years, as opposed to actually paying him less. I mean, we could have hypos all day about. If I may, your honor. I'll desist, or whatever, whatever the right word is. I want you to desist. The concept is who said it, okay? If his manager said, I think this is how the benefit works, and the manager is the manager of the station that he drives out of in West Virginia, that wouldn't trigger anything. But this is the entity, the Board of Trustees of the U.S. Pension Plan, the Administrative Committee of the UPS Retirement Plan, with final say. There is no one else. There is no further process. That's it. And that is the same way that this court has always looked at it, functionally. It's the finality, functionally. In Patterson, the individual was told in an informal way, in a phone call, not even a written letter like this, sorry, this qualified domestic relations order is no good. That was enough because that person had the authority to make that decision. Well, she also had what she thought was a present entitlement to pay. Very different than, you know, she thought she'd get paid in 10 years. And in all of the retiree health care cases, same thing. You've got benefits going way out in the future. Some people who are not going to be eligible for a long time are bringing those claims. I realize I may have overstayed my welcome, Your Honor. Any questions for Mr. McDonald? No, thank you. All right. Thank you, Mr. McDonald, for your argument. Thank you. Attorney, there's been a lot of new authority raised today, so I think it only might be fair to allow you to file a supplemental brief responding to these cases, if you wish. I mean, we're not going to require you to do anything, but if you wished, I mean... Maybe simultaneous. Simultaneous, maybe within 10 days. Briefs within 10 days, because there's a lot of authority here. It's unfair for you to say, okay, I want you to counter his authority, when you didn't have any idea what was going to be raised today. Your Honor, not to interrupt, I can... I'm prepared to discuss Thole a little bit. Okay. The other cases as well? I mean, you might want to listen to this, the recording of this argument. And, you know, we've heard about a whole bunch of different... Mr. McDonald's mentioned numerous precedents. You might want to... Well, the court will allow simultaneous briefs within 10 days, if you wish to file it. You don't have to file it. You might want to. But the court will allow both sides to file supplemental briefs within 10 days. Go ahead, you can argue too. Rebuttal. Can I raise one point on that? Sure. You will have then seen my argument in advance. I know, but that's what we're going to do, so thank you anyway. Okay. So I appreciate the opportunity to file a supplemental brief. Just to respond briefly to Thole. Thole was an issue where it was a defined benefit pension plan. Various participants sued the pension plan because they alleged that the plan had made some unwise investments, and that they were afraid that the plan was going to be impaired, and it would eventually be unable to pay their benefits. But there was not a concrete injury there, and so the plaintiffs didn't have standing because there was no indication at that moment that the plan was going to become unable to pay their benefits. The federal government could step in and pay those benefits if the plan went bust. Okay. So there was like a lack of traceability, or even an injury, I guess. Yeah, there was no real danger that they would ever not be paid their benefits. In other words, okay, they hadn't yet received a check that they thought was less than they were entitled to. Well, correct. And the court's point was, Judge Kavanaugh's point was, the plan is injured, and the plan has incentive to defend itself to vindicate its own injuries. It doesn't need these participants who don't have a property interest, or either equitable or otherwise, in the plan to vindicate those injuries for it. The employer is on the hook for any shortfalls. If there's extra money to be had that the plan is losing out on, that goes to the employer. So the plan has all the incentive in the world to That's Thole. And then I also just want to briefly touch on, there's TransUnion, Spokio, are a couple of the more recent Supreme Court decisions where you may have an informational injury, as my friend was discussing. If you have an informational injury, a statute gives you a right to sue without a concrete harm, without that loss of monetary interest. That's not sufficient for an injury, in fact. Thank you. Anything further? No, thank you. Good. Thank you both for your arguments. We'll look forward to reading your supplemental briefs. The case will be submitted.